UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>TIMOTHY HERLIHY,<br>Defendant. | Crim. No. 04-10167 |

### DEFENDANT'S SENTENCING MEMORANDUM

I.     FACTS

The Defendant adopts the statement of the offense conduct in the Presentence Report.

The Defendant was arrested on April 16, 2004. At the time of his arrest, he was an intravenous heroin user, and severely addicted. His involvement in this case stemmed from his need to support his habit. He had previously been in a methadone program, but was turned away from the program when he could no longer afford it. The Defendant recognizes that his arrest in this case may well have saved his life.

Mr. Herlihy was released on unsecured bond on April 20, 2004, and based on his desire to confront and overcome his heroin addiction, sent to the Gosnold Treatment Center in Falmouth, MA, where he completed an inpatient detoxification program.

From the detoxification program, Mr. Herlihy transferred to the Miller House, a residential program at Gosnold. As reported by Pretrial Services, the

Defendant "demonstrated motivation to continue his treatment but was slow in grasping some of the information. This did not appear to be from lack of desire, but rather his substantial opiate use slowed his ability to comprehend all the information provide at the Miller House. Once his body has filly withdrawn from the effects of his substance abuse and detox protocol, he began to engage with real enthusiasm."

While at the Miller House, the Defendant was recommended for the Miller Intensive Outpatient Program (IOP). This involved group counseling sessions, regular treatment reports, and random urine screens.

Upon his successful of the IOP, Mr. Herlihy relocated to a sober house in the Falmouth area.

Throughout the 15 months during which the Defendant has been on release, he has been engaged in full-time treatment, or worked. Since March, 2005, he has been employed at a Century 21 office in Hyannis. He is presently in the process of obtaining his real estate license.

For 14 months following his release, the Defendant has been completely sober, passing all his drug screens without any evidence of drug use. Most recently the Defendant suffered a relapse, testing positive for heroin. This was brought to the attention of the Court by way of a report from Pretrial Services, and motions by the government, to revoke bail, and the Defendant, to amend the conditions of this release to permit him to live with his father. After hearing before the Magistrate Judge, the government's motion to revoke was denied, and the Defendant's motion to amend was allowed.

Whether it was due to the stress of the upcoming resolution of this case, the easy availability of drugs at the sober house, or his own weakness in fighting

his addiction, the Defendant deeply regrets his relapse and is working to reestablish his recovery.

## II. ARGUMENT

### A. The government should be barred from seeking to increase the Defendant's sentence based on relevant conduct beyond that charged in the Superceding Indictment.

As originally charged in this case, the indictment alleged simply alleged that on or about March 3, 2004, the Defendant, together with Adam Ellard and Troy Brewer, illegally distributed, and conspired to distribute, hydrocodone. This indictment was dated May, 27, 2004.

On June 24, 2004, the United States Supreme Court decided *Blakely v. Washington*, 124 S. Ct. 159 (2004). In *Blakely*, the Court held that the Sixth Amendment prohibits the imposition of a sentence beyond that authorized by either facts found by a jury or admitted to by the defendant. This holding immediately put the constitutionality of the Sentencing Guidelines in doubt, particularly with respect to the practice of imposing increased sentences based on relevant conduct, neither charged nor admitted, and found by a judge by a preponderance of, oftentimes inadmissible, evidence.

Faced with the uncertainties flowing from *Blakely*, the Department of Justice instituted a policy designed to protect the government from Sixth Amendment challenges to sentences based on facts beyond the scope of the indictment. Pursuant to this policy, indictments were superceded, adding a "Notice of Additional Factors" section. This Notice of Additional Factors served not only to give the defendant notice of the full scope of the charges against him, but also served to stake out the limits of what the government claimed the

sentence-determining factors were. This policy was dictated by the logic of *Blakely*, which, citing 1 J. Bishop, Criminal Procedure §87, p 55 (2d ed. 1872), insisted that

> 'an accusation which lacks any particular fact which the law makes essential to the punishment is ... no accusation within the requirements of the common law, and it is no accusation in reason.' [Thus] 'every fact which is legally essential to the punishment' must be charged in the indictment and proved to a jury. 1 J. Bishop, Criminal Procedure, ch. 6, pp 50-56 (2d ed. 1872).

*Blakely, supra* at 2536, and n. 5.

Here, the Notice of Additional Factors in the Superceding Indictment charged that:

> 6.    As to the offenses charged in Counts One and Two of this indictment and relevant conduct as described in U.S.S.G. §1B1.3, the Defendant TIMOTHY HERLIHY is accountable for a quantity of hydrocodone that, when converted to marijuana as provided by USSG §2D1.1 (drug equivalency table), is equivalent to at least 250 grams of marijuana but less than 1 kilogram of marijuana. Accordingly, USSG §2D1(c)(16) applies to this defendant.[1]

This Additional Factor represents a finding by the grand jury, based on a presentment to it by the government. The government felt obliged to follow this procedure to comply with the dictates of *Blakely*, and to preserve its ability to argue for the maximum sentence it believed was justified by all applicable sentencing factors under the Guidelines. Without the specification of these Additional Factors, the government risked that the Defendant might be sentenced at the base offense level, without any enhancements for drug weight based on relevant conduct.

The government's position today is quite different than that expressed in

---

[1] This is in agreement with the finding of the Probation Office, and after a 2-level reduction for acceptance of responsibility, results in a total offense level of 6.

the Superceding Indictment. The government now claims that the relevant conduct should expanded to include approximately 10-15 times the weight previously specified. Instead of an adjusted offense level of 8, the government would have the Court sentence the Defendant at some as yet unknown offense level. This is grossly unfair, and inconsistent with due process and the principles of judicial estoppel.

Essentially, the government seeks to ignore what *it* persuaded a grand jury to include in the Superceding Indictment, to protect *itself* from the implications of *Blakely*. Clearly, at the time the Superceding Indictment came down, sentencing factors under the Guidelines were conceived as statutory elements, which must be charged in the indictment and proved to a jury beyond a reasonable doubt. The Defendant did not move to strike the Additional Factors (courts were split as to whether such motions had merit), and after *United States v. Booker*, 125 S. Ct. 738 (2005), was decided, the government did not act to remove them. Although the law of federal sentencing has drastically changed with *Booker*, the Superceding Indictment, as framed by the government still stands, and is the indictment to which the Defendant pleaded guilty. As a matter of due process, the government cannot now in effect amend the indictment yet again, and seek to have the Defendant sentenced as if he were charged with offenses, and sentenced for relevant conduct, not set forth in the indictment. See, *Berger v. United States*, 295 U.S. 78, 82 (1935) (the government allegations and proof must correspond such that "(1) ... the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.")

Additionally, the government should not be permitted to change its position with respect to relevant conduct as a matter of judicial estoppel. The government brought the Superceding Indictment clearly to benefit itself in the wake of *Blakely*. For the government now to ignore that charging document to enable it to pursue what it now believes to be in its interest smacks of duplicity. As the Court explained in *United States v. Levasseur*, 846 F.2d 786, 792 (1st Cir. 1988),

> The primary concern of the doctrine of judicial estoppel is to protect the integrity of the judicial process. See Note, *Judicial Estoppel: The Refurbishing of a Judicial Shield*, 55 Geo. Wash. L. Rev. 409, 434 (1987); Comment, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 N.W.U.L. Rev. 1244, 1248 (1986). In *Patriot Cinemas v. General Cinema Corp.*, 834 F.2d 208, 212 (1987), this court recognized that in certain constrained circumstances a party might be precluded from "asserting a position in one legal proceeding which is contrary to a position it has already asserted in another." We recognized that this doctrine, which we called "judicial estoppel", had "rather vague" contours. *Id*. Nevertheless, we concluded that "intentional self-contradiction" should not be "used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Id*. (quoting *Scarano v. Central R.R. Co.*, 203 F.2d 510 (3d Cir. 1953)). If such a tactic was attempted, the court was justified in acting to deny the unfair advantage. *Id*. In this circuit, then, when a litigant is "playing fast and loose with the courts," that party will be precluded from asserting a position inconsistent with a position he or she took in an earlier proceeding. *Patriot Cinemas*, 834 F.2d at 212. *Accord United States v. Kattar*, 840 F.2d 118, 129-30 n.7 (1st Cir. 1988).

Here, the government is clearly playing "fast and loose" with the courts. To further its sentencing goals, the government enlisted the aid of the grand jury to specify facts upon which the government sought to base the Defendant's sentence. The grand jury is an arm of the Court, and not the prosecutor's personal plaything. Following *Booker*, the government never sought to reform the Superceding Indictment and undo what it did to benefit itself. It should not be

permitted to do so now.

      **B.**      **To apply *Booker* in a manner which would permit the Defendant to be sentenced more severely that would have been permissible under the *Blakely*-ized indictment, would violate the prohibition against *ex post facto* laws.**

Although *United States v. Booker*, 125 S. Ct. 738 (2005), has rendered the Guidelines "advisory," principles of Due Process and Ex Post Facto require that the sentence be based on the law in effect at the time the offense was committed. These principles apply because the *Booker* remedy of advisory guidelines effectively increased the penalty range for all offenses; the remedy raised the maximum penalty for the typical offense from the top of the guideline range to the maximum allowed under the statute of conviction. If Congress had done what the Court did in *Booker* – made the guidelines advisory by excising §3553(b)(1) – there is no question that under the *Ex Post Facto* jurisprudence of the Supreme Court and all the circuits, this change could not apply to offenses committed before the change was enacted. See, *Miller v. Florida*, 482 U.S. 423 (1987) (holding that retroactive application of Florida's revised sentencing guidelines violated Ex Post Facto Clause). The Court cannot accomplish something through an unexpected statutory construction that the *Ex Post Facto* Clause would bar Congress from accomplishing through legislation. *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001); see also *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964); U.S. Const. art. I, §9, cl. 3. Since the instant offense occurred on March 3, 2004, which was before *Booker* was decided, the sentencing law in effect then included the mandatory guidelines, and those mandatory guidelines must be applied here as a matter of Due Process and *Ex Post Facto*.

These mandatory guidelines, however, must of course be applied in a manner that is constitutional. See, *Marks v. United States*, 430 U.S. 193, 196-97 (1977) (holding that when the Court issues a decision that expands criminal liability in one respect, but limits criminal liability on constitutional grounds in another respect, defendants whose conduct preceded the decision are entitled to have the beneficial aspects of the decision apply without the retroactive application of the detrimental aspects). Under the Sixth Amendment rulings in *Blakely* and *Booker*, the guideline range in a mandatory guideline system can only be based on facts admitted or proven to the jury beyond a reasonable doubt. *Booker*, 125 S. Ct. at 756. Thus, application of the mandatory guidelines in effect at the time of the offense in a constitutional manner results in the guideline range based on precisely that which the government alleged in Superceding Indictment, to which the Defendant pleaded guilty. The sentence here cannot constitutionally exceed this range.

### C. The government must prove relevant conduct beyond a reasonable doubt.

To the extent the government is permitted to prove relevant conduct beyond that alleged in the Superceding Indictment and admitted to by the Defendant, the government must prove such conduct beyond a reasonable doubt.

The Sentencing Commission has stated in its pre-*Booker* commentary to U.S.S.G. §6A1.3 that it "believes that the use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns." But as Justice Thomas pointed out in his dissent in *Booker*, "the Court's holding

today corrects this mistaken belief. The Fifth Amendment requires proof beyond a reasonable doubt, not by a preponderance of the evidence, of any fact that increases the sentence beyond what could have been lawfully imposed on the basis of facts found by the jury or admitted by the defendant." *Booker*, 125 S. Ct. at 798 n.6 (Thomas, J., dissenting).

The preponderance standard has no statutory basis, and particularly where the government is attempting to raise the guideline range through uncharged conduct, Fifth Amendment concerns can be alleviated only by requiring proof beyond a reasonable doubt. *Cf., Jones v. United States*, 526 U.S. 227, 229 (1999) (interpreting federal car jacking statute "in light of the rule that any interpretive uncertainty should be resolved to avoid serious questions about the statute's constitutionality").

The Ninth Circuit, while noting that the burden of proving any fact necessary to determine the base offense level or any enhancement rests squarely on the government, and that under certain circumstances that burden may be by clear and convincing evidence or even by proof beyond a reasonable doubt, declined to decide whether *Booker* affects the standard of proof. *United States v. Ameline*, 400 F.3d 646, 656 n.7 (9 Cir. 2005). However, several District Courts have ruled that since there is nothing in *Booker* to prohibit applying a higher burden of proof than the preponderance standard, they are free to require proof beyond a reasonable doubt. See, *United States v. West*, 2005 WL 180930 (S.D.N.Y. Jan. 27, 2005) (Sweet, J.); *United States v. Huerta-Rodriguez*, 355 F. Supp. 2d 1019, 1028 (D. Neb. Feb. 1, 2005) (Bataillon, J.); *United States v. Gray*, 2005 WL 613645 (S.D.W.Va. Mar. 17, 2005) (Goodwin, J.).

As Judge Gertner wrote in *United States v. Pimental*, 367 F. Supp. 2d 143 (D.

Mass. 2005):

> [W]e are in a hybrid regime, neither fish (totally indeterminate) nor fowl (totally mandatory.) Whether the Guidelines are presumptively reasonable, ... carefully considered, ... or something in between, ... they continue to play a critical role. Certain facts like the amount of loss continue to assume inordinate importance in the sentencing outcome. So long as they do, they should be tested by our highest standard of proof. In effect, the impact of the case law on sentencing from *Apprendi* to *Booker* is anomalous. It has added both more flexibility and more formality to the sentencing process. The Booker remedy decision made the Guidelines advisory, i.e. more flexible. But the principal decision in that case and those that had foreshadowed it reflected the Court's new concern with the formal procedures for determining facts essential to sentencing.
>
> Indeed, even if the *Sixth Amendment's* jury trial guarantee is not directly implicated because the regime is no longer a mandatory one, the *Fifth Amendment's* Due Process requirement is. *See, e.g., United States v. Nixon*, 418 U.S. 683, (1974) ("The *Fifth Amendment* [] guarantees that no person shall be deprived of liberty without due process of law ... It is the manifest duty of the courts to vindicate those guarantees."). Certain facts are significant, whether or not they play a dispositive role. *See, e.g., United States v. Huerta-Rodriguez*, 355 F. Supp. 2d 1019, 1027 (D. Neb. 2005) (finding that "in order to comply with due process in determining a reasonable sentence, this court will require that a defendant is afforded procedural protections under the Fifth and Sixth Amendments in connection with any facts on which the government seeks to rely to increase a defendant's sentence"); *id.* at 1027 n.8 ("This approach may not be mandated by Booker, but it is not inconsistent with, nor prohibited by, Booker.").
>
> We cannot have it both ways: We cannot say that facts found by the judge are only advisory, that as a result, few procedural protections are necessary and also say that the Guidelines are critically important. If the Guidelines continue to be important, if facts the Guidelines make significant continue to be extremely relevant, then Due Process requires procedural safeguards and a heightened standard of proof, namely, proof beyond a reasonable doubt.

This Court should rule similarly.

### D. The supposed sales the government seeks to include as relevant conduct are too remote.

Even if this Court finds that the alleged relevant conduct occurred as a matter of fact, that finding should not figure in the Court's Guideline calculation. The alleged relevant conduct is not relevant at all. It was not part of the conspiracy alleged in the indictment, which is limited to March, 2004; but rather reaches back to an unspecified period in the past.

For "conduct" to be "relevant," it must arise from or relate to the same course of conduct charged in the indictment. USSG §1B1.3. The government may not use the umbrella of relevant conduct to circumvent the constitutional requirement that to deny a defendant of his liberty, the charges against him must be alleged in an indictment, and proved by competent evidence, beyond a reasonable doubt. See, *United States v. Miller*, 179 F. 3d 961, 966-967 (5th Cir. 1999) (where separate drug transactions are remote in time, a strong showing of "similarity or regularity is necessary to compensate for the absence of temporal proximity" in order for the offenses to be part of the "same course of conduct.")

The government cannot make such a showing here. The alleged relevant conduct here relates to distinctly separate episodes. If the government wishes to punish the Defendant for them, he must first be properly charged and convicted.

### E. Pursuant to 18 USC 3553(a), probation is the appropriate sentence.

Following Booker, the Sentencing Reform Act has taken on new vitality, and it is to this statute that the Court must look for guidance in setting a just sentence. Pursuant to 18 USC §3553(a), a sentence shall be "sufficient, but not greater than necessary" to achieve the four sentencing goals set out in

§3553(a)(2):

(a) retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide "just punishment");

(b) deterrence;

(c) incapacitation ("to protect the public from further crimes"); and

(d) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

To determine the minimally sufficient sentence, the Court must look to the several factors listed in §3553(a):

(1) "the nature and circumstances of the offense and the history and characteristics of the defendant;"

(2) "the kinds of sentence available;"

(3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range;

(4) the need to avoid unwarranted sentencing disparity; and

(5) the need to provide restitution where applicable.

18 USC §3553(a)(1) and (3)-(7).

In reaching a sentencing decision, the range proposed by the Guidelines is now only one factor among many in determining the sentence. *United State v. Ameline*, 400 F. 3d 646 (9th Cir 2005); *United States v. Ranum*, 353 F. Supp. 2d 986 (E.D. Wis. 2005); *United States v. Myers*, 353 F. Supp. 2d 1026 (S.D. Iowa 2005). To assign the proposed Guideline sentence presumptively greater weight "comes perilously close to the mandatory regime found to constitutionally infirm in Booker." *United State v. Jaber*, 62 F. Supp. 2d 365, 372 (D. Mass. 2005).

Applying these factors to the Defendant, probation for a term of 2-3 years is the most appropriate sentence:

**(1)   The nature and circumstances of the offense and the history and characteristics of the defendant.**

The Defendant's involvement in this case was purely a function of his addiction. The Defendant was involved solely to be able to obtain drugs from a ready supplier.

Unlike Ellard, the Defendant did not have an economic motive. There is no evidence he made any money on the deal. There only person who profited here was Ellard. The Defendant was not a professional drug dealer. The evidence is clear that the Defendant has always sought gainful employment. Periods of unemployment have been caused by his untreated addiction.

Further and most importantly, the Defendant has shown a genuine commitment to rehabilitation. For over one year he has been completely sober, participating fully in an intensive detoxification and drug rehabilitation program. Unfortunately, his record has not been perfect; recovery from heroin addiction rarely is. But his transformation over the past 15 months has been remarkable.

While on release and engaged in recovery, the Defendant has not only been regularly employed; he has pursued new opportunities and is now working as a trainee in a real estate office. He has completed the coursework for obtaining a real estate license, and is now ready to take the examination.

Although he comes from a broken home, in which there was serious alcoholism and drug addiction on the part of his mother, the Defendant's father has been enormously supportive and engaged. His support and encouragement will be a great asset for the Defendant. With determination and supervision,

there is every reason to believe the Defendant will emerge from this case as a contributing member of society.

The Defendant's character and commitment to rehabilitation are attested to by the letters of support that have been offered by family (James M. Herlihy, father; Joan Caron, aunt; Christopher Caron, cousin), employers (Jim D'Amico), individuals he has helped (Barbara Porro, Christopher Gromberg, Jacquie Wilson), and those who have helped him (Douglas Lopes, sponsor; Matthew Donlon). Copies of these letters are attached below as Exhibits.

**(2)     The kinds of sentence available**

The Court has available to it an enormous range of option. Of particular importance here would be a probationary sentence with conditions designed to encourage and support the Defendant in his recovery and rehabilitation. These would include attendance at AA or NA meetings; random drug screens; individual or group drug counseling; and regular employment.

**(3)     The guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range;**

In this case, the sentence urged by the Defendant is consistent with the guideline range. As determined by the Probation Office, he is Level 6, Category II. The Guideline range is therefore 1 to 7 months. As noted in the PSR, the Guidelines provide for probation in these circumstances, pursuant to USSG §5C1.1.

**(4)     The need to avoid unwarranted sentencing disparity.**

While the sentence proposed here my be less than that imposed on the co-Defendants, this disparity is clearly not unwarranted. The Defendant's role was significantly less than his co-Defendants. Ellard described him as his "courier."

He did not profit the deal. And he alone has used the time since his arrest to transform himself from an addicted person to a person committed to recovery and productivity.

(5)   **The need to provide restitution where applicable.**

This factor is not applicable, although it should be noted that the Defendant has contributed to his room and board and the cost of treatment during the past 15 months.

As noted, the Defendant suggests that a term of probation, of 2-3 years, with conditions as described above, is the most appropriate sentence. Such a sentence will be "sufficient, but not greater than necessary" to achieve the goals of sentencing set out in §3553(a): retribution, deterrence, incapacitation, and rehabilitation.

Date: 7/13/05

by his attorneys,

Matthew H. Feinberg
BBO #161380
Matthew A. Kamholtz
BBO #257290
FEINBERG & KAMHOLTZ
125 Summer St.
Boston, MA 02110
(617) 526-0700

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was this day served upon the following attorney(s) of record, via electronic/first class mail:

David Tobin, AUSA
United States Attorney's Office
Suite 9200
One Courthouse Way
Boston, MA 02210

Tricia Marcy, USPO
United States Probation Office
Suite 1200
One Courthouse Way
Boston, MA 02210

Date: 7/13/05

Matthew A. Kamholtz